# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# CHARLOTTESVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | Criminal No. 3:18 CR 25 |
| v. | |
| BENJAMIN DRAKE DALEY | |

## UNITED STATES' OPPOSITION TO DEFENDANT'S MOTION FOR BOND REVIEW

The United States of America, by and through the undersigned counsel, submits this memorandum in opposition to Defendant Benjamin Daley's request for a bond review hearing.

## PROCEDURAL BACKGROUND

On October 2, 2018, Benjamin Drake Daley and three fellow co-defendants (Michael Miselis, Thomas Gillen, and Cole White) were arrested at various locations in California on a complaint issued in the Western District of Virginia alleging one count of Conspiracy to Riot in violation of 18 U.S.C. § 371, and one count of Riots in violation of 18 U.S.C. § 2101. After processing, Defendants Daley, Miselis, and Gillen were transported to the United States District Court for the Central District of California in Los Angeles for their initial appearance and detention hearings on the same day.[1] The Government moved for all defendants to be detained pending trial.

That day, Defendants Daley, Miselis, and Gillen made their initial appearances before the Honorable Jean B. Rosenbluth, United States Magistrate Judge for the Central District of California. Rather than delay their detention hearings for the Western District of Virginia, Daley and Gillen requested detention hearings in the Central District of California, but requested to

---

[1] Cole White made his initial appearance at the United States District Court in the Northern District of California in Oakland on October 3, 2018, the next day.

1

continue their hearings for a later date. This request was granted. Defendant Miselis also requested a detention hearing in the Central District of California, which was held on the day of his initial appearance, October 2, 2018. As to Miselis, the magistrate judge found no combination of conditions would reasonably assure the safety of any person or the community. See United States v. Michael Miselis, C.D.Ca. Crim. No. 2:18-mj-02624 (Detention Order at 3, filed October 2, 2018).

On October 4, 2018, a detention hearing was held for Defendant Gillen, and the magistrate judge ordered him detained. See United States v. Thomas Gillen, C.D.Ca. Crim. No. 2:18-mj-02622 (Detention Order at 3, filed October 4, 2018).

On October 9, 2018, a detention hearing was held for Defendant Daley, and just like Miselis and Gillen, the magistrate judge found that no combination of conditions would assure the safety of any person or the community. However, unlike with Gillen and Miselis, the magistrate judge also found that his release would not assure his appearance as required. See United States v. Benjamin Daley, C.D.Ca. Crim. No. 2:18-mj-02623 (Detention Order at 2, filed October 9, 2018).

Separately, in the Northern District of California, Cole White was ordered detained pending trial after a detention hearing. In that case, like Daley, the magistrate judge ordered White detained because he posed both a danger to the community and a risk-of-flight. See United States v. Cole White, N.D.Ca. Crim. No. 4:18-mj-71386 (Detention Order, filed October 19, 2018).[2]

---

[2] On October 10, 2018, when Defendant Miselis was before the court for an identity hearing pursuant to Rule 5 in the Central District of California, he requested a bond review in light of the his parents' offering a substantial amount of equity in their home to serve as a bond. Based on the parents' ability to post a secured bond—and apparently without addressing how this resolved her initial concerns about the defendant's dangerousness—the magistrate judge changed her position regarding Defendant Miselis's detention, and ruled that she would order him released upon completion of the appropriate paperwork and after allowing the government 48-hours to appeal her order. The next day, assigned District Judge in the Western District of Virginia stayed the magistrate judge's order, and a hearing on regarding Miselis is scheduled for December 3, 2018 at 11:30 am.

2

## I. The Defendant Cannot Appeal His Detention Order to this Court.

Because the defendant elected to have his detention hearing in the Central District of California, he cannot now ask this Court to re-litigate the issue of detention. The defendant correctly notes (at 1) that he is seeking review of the CDCA detention order through the only mechanism available to him, which is 18 U.S.C. § 3145(b).[3] However, it is "improper procedure" for a motion under § 3145 to be reviewed by a magistrate judge, rather, such motion "should be considered and ruled upon in the first instance by a district judge in the court of original jurisdiction." See United States v. Cisneros, 328 F.3d 610, 615 (10th Cir. 2003) (finding that the wording "a court having original jurisdiction over the offense" in § 3145 "must be interpreted as the district judge assigned to the case."); United States v. Johnson, 858 F.Supp. 119, 122 (N.D. Ind. 1994) (Bail Reform Act "authorizes a district judge to review a decision made by a magistrate judge, but it does not confer the same authority upon a magistrate judge in the charging district when the challenged order was issued by a magistrate judge in the arresting district"); see also United States v. Cannon, 711 F. Supp. 2d 602, 606 (E.D.Va. 2010) (after order of detention in arresting district, "a new detention hearing before a magistrate judge in charging district . . . .would essentially be 'three bites at the apple' rather than the 'two bites' contemplated by Bail Reform Act").

Although the United States is confident this Court would reach the same conclusion after any such hearing, to allow the defendant to re-litigate his detention to the magistrate court

---

[3] The only other mechanism in the Bail Reform Act that contemplates modification of a detention order is 18 U.S.C. § 3142(f), providing that a hearing "may be reopened" if a judicial officer finds that "information exists that was not known to the movant at the time of the hearing and that has a material bearing" on the issue. 18 U.S.C. § 3142(f). However, "[b]y its terms, this section provides for reconsideration of the detention order only by the same judicial officer that conducted the original detention hearing, and only when there is new evidence that is material to the decision of whether detention is appropriate." See United States v. Cannon, 711 F.Supp. 2d 602, 606 (E.D. Va. 2010) (citing United States v. Cisneros, 328 F.3d 610, 614 (10th Cir. 2003). Neither of those two conditions are present here.

3

would mean that every defendant who elects a detention hearing in the arresting district would get to litigate his detention anew. The Bail Reform Act simply does not authorize this additional layer of review and, upon information and belief, it is not this Court's typical practice.

## II. The Magistrate Judge Correctly Concluded that a Detention Hearing Was Permitted.

In the event that this Court decides to take up the merits of the defendant's motion, the motion should fail. Rather than litigating the 3142(g) factors in support of the magistrate judge's finding there were no combination of conditions that could assure the safety of the community or the defendant's return to court, the defendant now argues – for the first time – that the magistrate judge could not even conduct a detention hearing in the first place. In his motion, the defendant puts forth the same arguments that co-defendant White made at his own detention hearing in the Northern District of California, which were rejected by the magistrate judge. See United States v. Cole White, N.D.Ca. Crim. No. 4:18-mj-71386 (Detention Order, filed October 19, 2018). In any event, the magistrate judge in the Central District of California correctly concluded that a detention hearing was warranted, and had multiple bases for doing so.

### A. The Government's motion under Section 3142(f)(2)(A) provided a basis for a detention hearing.

At the defendant's initial appearance in the Central District of California, the government moved that he be detained because the case involves "a serious risk that such person will flee" pursuant to § 3142(f)(2)(A). There is not extensive authority discussing what must be shown to trigger a hearing under this provision, but Judge Urbanski put it simply: "a detention hearing may be held if either the United States or the court *believes* there is a serious risk of flight." United States v. Powers, 318 F.Supp 2d 339, 341 (W.D. Va. 2004) (emphasis added). In any event, under

4

any standard, there were substantial grounds to believe the defendant posed a serious risk of flight, to include, among other reasons, (1) his prior failure to appear; (2) the defendant's history of substance abuse; (3) his leadership role and substantial involvement in a violent white-supremacist group based in Southern California; (4) the defendant's extensive international contacts, to include his recent extended trip to Europe to meet with foreign white-supremacist groups; (5) approximately $10,000 in cash located in his residence; and (6) the potentially lengthy sentence (10 years) he faces. The circumstances easily any standard required to show a serious risk of flight to warrant not only a detention hearing, but also the defendant's pretrial detention, as the magistrate judge correctly concluded.

There is more. Although the timeline was unclear at the time of the defendant's arrest, it now appears that the defendant committed the instant offense while he was on court-ordered probation for his prior conviction. According to records with Pretrial Services, the defendant's there-year term of probation expired on May 22, 2017. While on probation, the defendant formed a white nationalist organization, the Rise Above Movement ("RAM") as alleged in the indictment, which engaged acts of violence in furtherance of a riot in Huntington Beach, California, on March 25, 2017 and in Berkeley on April 15, 2017. With respect to the Berkeley riots, the defendant, while still on probation, organized and paid for a 15-passenger van for himself and approximately nine other RAM members to drive six hours from the greater Los Angeles area to Berkeley, where they wore skull masks and collectively assaulted numerous protestors in furtherance of in a riot. The magistrate court in CDCA did not need this information to find the defendant Daley posed a serious risk of flight. However, it nevertheless constitutes additional, powerful, and independent bases to find that (1) he will not abide by orders of this Court; (2) posed a serious risk of flight

5

sufficient to justify a detention hearing under any standard; and (3) the magistrate judge in CDCA correctly concluded that no combination of conditions would reasonably assure his appearance.

Of course, just because the government moves for a detention hearing under Section 3142(f)(2)(A), that does not mean that the defendant's dangerousness cannot also be considered, or that the calculus is otherwise cabined only to evidence of potential risk of flight. In fact, such inflexibility is precisely what the Bail Reform Act was intended to eliminate.[4] "Once a judicial officer determines that a detention hearing is warranted, the concept of danger to the community resurfaces." United States v. Butler, 165 F.R.D. 68, 71 (N.D. Ohio 1996). The Court then analyzes the factors in § 3142(g), which includes "the nature and seriousness of the danger to any person or the community that would be posed by the person's release." Butler, 165 F.R.D. at 71; 18 U.S.C. § 3142(g)(4).

After defendant Daley's detention hearing in the CDCA, the magistrate judge found that all four § 3142(g) factors weighed in favor of pretrial detention, including (1) nature and circumstances of the offenses charged; (2) the weight of the evidence against the person; (3) the history and characteristics of the person, including family ties, the person's character, ties to the community, and criminal history; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release. Upon these findings, the magistrate judge correctly concluded there were no "condition or combination of conditions will reasonably

---

[4] See S. Rep. No. 98-225, at 5 (1984), reprinted in 1984 U.S.C.C.A.N. 3182, 3188 (report of the Senate Judiciary Committee on the Bail Reform Act of 1984, stating that under the old law "if a court believe[d] that a defendant poses . . . a danger [to community safety], it faces a dilemma--either it can release the defendant prior to trial despite these fears, or it can find a reason, such as risk of flight, to detain the defendant (usually by imposing high money bond). In the committee's view, it is intolerable that the law denies judges the tools to make honest and appropriate decisions regarding the release of such defendants."; "[pre-existing law] provided too little flexibility to judges in making appropriate release decisions regarding defendants who pose serious risks of . . . danger to the community." Id. The report suggested that the Act arose from a "broad base of support for giving judges the authority to weigh risks to community safety in pretrial release decisions." Id. at 6.

6

assure the appearance of the person as required, and the safety of any other person and the community." 18 U.S.C. § 3142(e).

> **B. The Federal Riots Statute qualifies as a crime of violence under the Bail Reform Act, and Section 3142(f)(1)(A) provides an additional basis for a detention hearing.**

In addition to the serious risk of flight under Section 3142(f)(2)(A), the government had an alternative bases under which a detention hearing was required: that this case involves a crime of violence under Section 3142(f)(1)(A).[5]

Section 3142(f) of the Bail Reform Act provides that a "judicial officer shall hold a hearing to determine whether any condition or combination of conditions . . . will reasonably assure the appearance of such person as required and the safety of any other person and the community . . . (1) upon motion of the attorney for the Government, in a case that involves (A) a crime of violence." 18 U.S.C. § 3142(f)(1)(A). The Bail Reform Act's definition of "crime of violence" is found in Section 3156(a)(4), and provides three paths for a crime to qualify as a crime of violence:

(A) an offense that has as an element of the offense the use, attempted use, or threatened use of physical force against the person or property of another;

(B) any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense; or

(C) [certain specified sex offenses not at issue in this case].

---

5  As noted above, the defendant now argues for the first time that the magistrate judge could not conduct a detention hearing because he did not pose a sufficiently serious risk of flight to trigger a detention hearing under Section 3142(f)(2)(A). Putting the merits of that claim (discussed above) aside, if the defendant had raised this argument in California, and if the magistrate court had expressed any concern that such a claim had merit, the government would have moved in the alternative under Section 3142(f)(1)(A), just as it did in the case of <u>United States v. Cole White</u> in the Northern District of California.

7

The offense of "Riots" under Section 2101 qualifies as a crime of violence under <u>both</u> subsections A and B, but the quickest and most direct path is through subsection B.

### 1. Riots Involves a Substantial Risk That Physical Force May Be Used, Thereby Qualifying as a Crime of Violence under Section 3156(a)(4)(B).

There is no question that the offense of Riots "involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense," thereby qualifying as a crime of violence under § 3156(a)(4)(B). As explained in the following section, Riots also qualifies under § 3156(a)(4)(A) because it has as an element the use, attempted use, or threatened use of physical force. However, subsection (a)(4)(B) "is clearly intended to case a wider net" and provides the most direct path to qualifying as a crime of violence, the government begins there. <u>United States v. Dillard</u>, 214 F.3d 88, 91 (2d Cir. 2000).

A riot requires either (1) "an act or acts of violence by one or more persons" or (2) "a threat or threats of the commission of an act or acts of violence." 18 U.S.C. § 2102. This text makes clear that a person who travels with intent to incite, organize, promote, encourage, participate in, carry on a riot, or commit acts of violence in furtherance of a riot in violation of Section 2101 necessarily "involves a substantial risk of physical force may be used against the person or property of another." The defense cannot meaningfully argue otherwise, and they do not appear to do so. Because Riots under § 2101 involves a substantial risk of force under § 3156(a)(4)(B), it clearly qualifies as a crime of violence under the Bail Reform Act, and the government may seek to detain the defendant pursuant to § 3142(f)(1)(A).

To provide further support for such conclusion, courts have concluded that offenses qualify as crimes of violence in statutes requiring far less of a nexus to violence. Take the felon-in-possession statute for example, 18 U.S.C. § 922(g). That statute requires the knowing possession of a firearm by a felon, without any mention of or requirement for acts or threats of violence.

8

Nevertheless, in United States v. Dillard, the Second Circuit found that the felon-in-possession statute qualifies as a crime of violence under (a)(4)(B) it "involves exactly what section 3156(a)(4)(B) postulates – a substantial risk of violence." 214 F.3d at 104. Riots, by definition, make for an even stronger case.

The defendant does not question that the offense of Riots poses a substantial risk of violence. Instead, he argues that the definition of a crime of violence under § 3156(a)(4)(B) is unconstitutional in light of the Supreme Court's rulings in Johnson v. United States, 135 S. Ct. 2551 (2015) and Dimaya v. Sessions, 138 S. Ct. 1204 (2018), which respectively held that the residual clauses of the Armed Career Criminal Act and 18 U.S.C. § 16(b) are unconstitutionally vague.

The government is not aware of any case where a court has extended these holdings to the Bail Reform Act, and the defendant is effectively asking this Court to be the first to unilaterally declare a provision of the Bail Reform Act unconstitutional. The Court should decline to do so. In fact, both the Eleventh and Second Circuits have recently ruled that Section 924(c)(3)(B) – which has language substantially identical to § 3156(a)(4)(B) – was not unconstitutional after Johnson and Dimaya, and that those provisions embody a conduct-based approach. See United States v. Barrett, 903 F.3d 166 (2d Cir. Sept. 10, 2018); United States v. Ovalles, No. 17-10172 (11th Cir. October 4, 2018) (en banc). A conduct-based approach to this case requires the Court to examine the manner in which the defendant committed the instant offense. The defendant's travel to Berkeley and Charlottesville with intent to incite, participate, promote, encourage, and carry on in a riot as well as commit acts of violence in furtherance of a riot leave no question that his offense involves the substantial risk that physical force was used.

9

Because the offense of riots involves a substantial risk of physical force under § 3156(a)(4)(B), it qualifies as a crime of violence and, accordingly, the government may seek to detain him pursuant to § 3141(f)(1)(A).

### 2. Riots Has an Element the Use, Attempted Use, or Threatened Use of Physical Force, Thereby Qualifying as a Crime of Violence Under Section 3156(a)(4)(A).

Even if 3156(a)(4)(B) were unconstitutional, riots qualifies as a crime of violence under Section 3156(a)(4)(A) because it has as an element the use, attempted use, or threatened use of force. To violate Section 2101, a person must travel with intent to (1) incite a riot (2) organize, promote, encourage, participate in, or carry on in a riot; or (3) to commit any act of violence in furtherance of a riot; or (4) to aid or abet any person doing the same, and during such travel or thereafter, performs or attempts to perform an overt act for one of these purposes. Importantly, a riot requires either (1) "an act or acts of violence by one or more persons" or (2) "a threat or threats of the commission of an act or acts of violence." 18 U.S.C. § 2102. By definition, the riot requires at least one act of violence, attempted act of violence, or one threat of an act of violence. Accordingly, a riot has as an element the use, attempted use, or threatened use of force. It therefore falls within Section 3156(a)(4)(A) and qualifies as a crime of violence.

### CONCLUSION

In sum, having requested and received a detention hearing in the arresting district, the defendant cannot appeal his detention order to this court. The only available review is to appeal to the district judge to which the case is assigned. In any event, the magistrate court in the Central District of California had multiple bases that permitted a detention hearing, and after such hearing, it correctly concluded that there were not conditions or combination of conditions that would reasonably assure the safety of the community and the defendant's appearance in court. If this

10

Court elects to review the defendant's bond, the government respectfully submits that it should do the same.

>Respectfully submitted,
>
>Thomas T. Cullen
>United States Attorney
>
>
>/s/Christopher R. Kavanaugh
>Assistant United States Attorney
>United States Attorney's Office
>Western District of Virginia
>255 W. Main Street
>Charlottesville, VA 22902

**CERTIFICATE OF SERVICE**

I hereby certify that on November 29, 2018, I electronically filed the foregoing Motion and Proposed Order with the Clerk of the Court using the CM/ECF System, which will send notice, and constitute service, of such filing to counsel of record.

/s/
Christopher R. Kavanaugh
Assistant United States Attorney