CLERK'S OFFICE U.S. DIST. COURT
AT CHARLOTTESVILLE, VA
FILED

05/02/2019

JULIA C. DUDLEY, CLERK
BY:
DEPUTY CLERK

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
## CHARLOTTESVILLE DIVISION

|  |  |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. 3:18-cr-00025 |
| v. | MEMORANDUM OPINION |
| BENJAMIN DALEY, *ET AL.*, *Defendants.* | JUDGE NORMAN K. MOON |

This matter is before the Court upon Defendants Benjamin Daley, Michael Miselis, and Thomas Gillen's motions to dismiss the indictment.[1] (Dkts. 72, 73, 74). On October 10, 2018, Defendants were indicted on one count of conspiracy to commit an offense against the United States in violation of 18 U.S.C. § 371 (Count One) and one count of traveling in interstate commerce with the intent to riot (Count Two) in violation of 18 U.S.C. § 2101 ("Federal Anti-Riot Act" or "Anti-Riot Act"). (Dkt. 8). Defendants mount a sweeping attack on the validity of 18 U.S.C. § 2101 and both counts of the indictment. Defendants' arguments fail, and the Court will deny the motions to dismiss the indictment.

## I.    LEGAL STANDARD

"An indictment must contain the elements of the offense charged, fairly inform a defendant of the charge, and enable the defendant to plead double jeopardy as a defense in a future prosecution for the same offense." *United States v. Palin*, 874 F.3d 418, 423–24 (4th Cir. 2017) (quoting *United States v. Daniels*, 973 F.2d 272, 274 (4th Cir. 1992)). "Absent a charge of every essential element of an offense, an indictment is invalid," *id*. at 424, and "mere reference

---

[1]     Defendant Daley filed a motion to dismiss the indictment, (dkt. 72), which Defendants Miselis and Gillen joined in full. (Dkts. 73, 74). On November 30, 2018, Defendant Cole Evan White pleaded guilty to Count One of the indictment. (Dkt. 58). Defendant White is not a party to the present motion to dismiss.

to the applicable statute does not cure the defect." *United States v. Kingrea*, 573 F.3d 186, 191 (4th Cir. 2009). "When the words of a statute are used to describe the offense generally, they 'must be accompanied with such a statement of the facts and circumstances as will inform the accused of the specific offense, coming under the general description, with which he is charged.'" *Id.* (quoting *United States v. Brandon*, 298 F.3d 307, 310 (4th Cir. 2002)). *See also* Fed. R. Crim. P. 7(c)(1) ("The indictment . . . must be a plain, concise, and definite written statement of the essential facts constituting the offense charged . . ."). In ruling on Defendants' motions to dismiss the indictment, the Court must accept all factual allegations in the indictment as true. *See Boyce Motor Lines v. United States*, 342 U.S. 337, 343 n.16 (1952). Moreover, the Court must construe the indictment in a "practical" rather than "purely technical" manner, "[a]pplying a liberal standard in support of sufficiency." *United States v. Matzkin*, 14 F.3d 1014, 1019–20 (4th Cir. 1994) (citations omitted).

## II.    FACTS AS ALLEGED IN THE INDICTMENT

Defendants are allegedly residents of California who associated with the "Rise Above Movement" (RAM), a "white-supremacist," "alt-right" organization whose members allegedly hold "anti-Semitic, racist, and white-supremacist views and promoted violence against those they believed held opposing political views." (Dkt. 8 ¶¶ 4–6). Between March 2017 and August 2017, Defendants and other members of RAM allegedly "traveled to multiple political rallies and organized demonstrations in California and Virginia, where they prepared to and engaged in acts of violence against numerous individuals." (*Id.* ¶ 7).

Count One of the indictment alleges that beginning in March 2017, Defendants "knowingly and willfully" conspired to violate 18 U.S.C. § 2101 by "traveling in interstate commerce and using a facility of interstate commerce with intent to (a) incite a riot, (b) to

Case 3:18-cr-00025-NKM-JCH   Document 104   Filed 05/02/19   Page 2 of 31   Pageid#: 582

organize, promote, encourage, participate in, and carry on a riot, (c) to commit an act of violence in furtherance of a riot, and (d) to aid or abet" others in doing the same, all in violation of 18 U.S.C. § 371. (*Id*. ¶ 9).

Defendants allegedly committed a number of overt acts "during and in furtherance of the conspiracy," including traveling to and committing one or more acts of violence at a "purported political rally" in Huntington Beach, California on or about March 25, 2017; "traveling in interstate commerce" and committing acts of violence at a "purported political rally" in Berkeley, California on or about April 15, 2017; purchasing flights from California to, and reserving lodging in, Charlottesville, Virginia for August 11–13, 2017, and then traveling in interstate commerce on those flights to Charlottesville; purchasing athletic tape and baseball helmets in Charlottesville; "obtain[ing] torches and attend[ing] a torch-lit march" on the grounds of the University of Virginia (UVA) on August 11, 2017, where they incited and "committed acts of violence in furtherance of a riot"; "attend[ing] the Unite the Right rally in and around the vicinity of Emancipation Park" on August 12, 2017 after "wrapping their hands with athletic tape," where they incited and "committed acts of violence in furtherance of a riot"; and, finally, traveling on return flights to California on or around August 13, 2017. (*Id*. ¶¶ 10(a)-(o)).

Count Two alleges that Defendants traveled in interstate commerce from California to Charlottesville on or about August 11, 2017, "with intent" to incite, organize, promote, encourage, participate in, and carry on a riot, commit an act of violence in furtherance of a riot, and aid or abet others in doing the same, and then "perform[ing] or attempt[ing] to perform" such acts in furtherance of a riot on August 11, 2017 on the grounds of UVA and on August 12, 2017 in and around Emancipation Park, all in violation of 18 U.S.C. § 2101. (*Id*. ¶ 13).

3

### III.  ANALYSIS

Defendants raise numerous challenges to the validity of 18 U.S.C. § 2101 and both counts of the indictment.  The Court addresses each argument in turn.

#### A.  Judicial Notice of *Kessler v. City of Charlottesville*

Defendants first ask the Court take judicial notice of various factual findings and legal conclusions made in *Kessler v. City of Charlottesville*, No. 3:17-cv-00056, 2017 WL 3474071 (W.D. Va. Aug. 11, 2017).  (Dkt. 72 at 5–7).  There, Judge Conrad granted Jason Kessler's motion for a preliminary injunction preventing the City of Charlottesville "from revoking the permit to conduct a demonstration at Emancipation Park on August 12, 2017."  *Kessler*, 2017 WL, at *3.  Federal Rule of Evidence 201(b) allows courts to "judicially notice" "a fact" that is not "subject to reasonable dispute" because the fact (1) is "generally known within the trial court's territorial jurisdiction"; or (2) "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."

The Court declines to judicially notice any specific factual findings, legal reasoning, or legal conclusions from *Kessler*.  Judicial notice of legal conclusions or legal reasoning concerning Kessler's entitlement to a preliminary injunction would be inappropriate.[2]  *See* Fed. R. Evid. 201(b) ("The court may judicially notice a *fact*. . . ." (emphasis added)).  Moreover, "[o]nly indisputable facts" are "susceptible to judicial notice."  *United States v. Zayyad*, 741 F.3d 452, 463 (4th Cir. 2014).  "[F]acts adjudicated in a prior case . . . do not meet either test of

---

[2]  Defendants frame their request as covering only the "factual background" from *Kessler*, (dkt. 72 at 5), but the list of items Defendants ask the Court to judicially notice contains several legal conclusions.  (*Id*. at 6–7; *see also* dkt. 87 at 8).

4

indisputability contained in Rule 201(b)." *Id.*[3]  In taking judicial notice of records from prior judicial proceedings, "generally, a court will recognize only indisputable court actions, such as the entry of a guilty plea or the dismissal of a civil action." *In re Omnicare Inc. Sec. Litig.*, 769 F.3d 455, 468 (6th Cir. 2014).[4]  But where, as here, parties "disagree about the meaning to be ascribed" to facts, judicial notice of such facts under Rule 201(b) is inappropriate. *Ohio Valley Envtl. Coal. v. Aracoma Coal Co.*, 556 F.3d 177, 216 (4th Cir. 2009).  *See also Goldfarb v. Mayor & City Council of Baltimore*, 791 F.3d 500, 511 (4th Cir. 2015) (declining to judicially notice exhibits where "parties vehemently disagree about the nature and scope" of the exhibits, "putting at issue basic factual matters relevant to interpreting what those exhibits mean").  Moreover, the Government correctly notes that the findings and conclusions at issue "reflect the positions of parties not involved in the present criminal case: Jason Kessler and the City of Charlottesville."  (Dkt. 79 at 6).

Accordingly, the Court will judicially notice that Judge Conrad granted Jason Kessler's motion for a preliminary injunction as an incontrovertible matter of public record, but will deny Defendants' request for judicial notice of any specific factual finding, legal reasoning, or legal conclusion from *Kessler* as inappropriate under Federal Rule of Evidence 201(b).

---

[3]     Defendants argue that the Government fails to show how Judge Conrad's factual findings or "explanation for [his] decision" are disputed or disputable.  (Dkt. 87 at 7–8).  But "[t]he party requesting judicial notice of the particular fact bears the burden of proving that Rule 201's standard is satisfied." *Farmer v. United States*, No. 5:10-cr-271, 2015 WL 12911626, at *2 (E.D. N.C. Aug. 31, 2015).

[4]     *See also Ferguson v. Extraco Mortg. Co.*, 254 F. App'x 351, 352 (5th Cir. 2007) ("A court may take judicial notice of a document filed in another court . . . to establish the fact of such litigation and related filings, but generally cannot take notice of the findings of fact from other proceedings because those facts are usually disputed and almost always disputable.").

5

**B.      Facial & As-Applied Challenges to 18 U.S.C. § 2101**

The bulk of Defendants' arguments concern the facial validity of 18 U.S.C. § 2101 (the "Anti-Riot Act" or "Federal Anti-Riot Act").  Specifically, Defendants assert that § 2101 must be facially invalidated for (1) vagueness; (2) overbreadth; (3) failure to properly criminalize incitement; and (4) exceeding Congress's powers under the Commerce Clause.  Defendants also contend that § 2101 cannot constitutionally be applied to "disorders arising from political demonstrations."  (Dkt. 72 at 18).  Before assessing these arguments, a review of the Anti-Riot Act's primary provisions is in order.

Section 2101(a) provides that:

> Whoever travels in interstate or foreign commerce or uses any facility of interstate or foreign commerce, including, but not limited to, the mail, telegraph, telephone, radio, or television, with intent (1) to incite a riot; or (2) to organize, promote, encourage, participate in, or carry on a riot; or (3) to commit any act of violence in furtherance of a riot; or (4) to aid or abet any person in inciting or participating in or carrying on a riot or committing any act of violence in furtherance of a riot; and who either during the  course of any such travel or use or thereafter performs or attempts to perform any other overt act for any purpose specified [in (1)-(4)] . . . [s]hall be fined . . . or imprisoned not more than five years, or both.

Certain terms employed in § 2101 are further defined in 18 U.S.C. § 2102.  Section 2102(a) defines "riot" as:

> [A] public disturbance involving (1) an act or acts of violence by one or more persons part of an assemblage of three or more persons, which act or acts shall constitute a clear and present danger of, or shall result in, damage or injury to the property of any other person or to the person of any other individual or (2) a threat or threats of the commission of an act or acts of violence by one or more persons part of an assemblage of three or more persons having, individually or collectively, the ability of immediate execution of such threat or threats, where the performance of the threatened act or acts of violence would constitute a clear and present danger of, or would result in, damage or injury to the property of any other person or to the person of any other individual.

Section 2102(b) provides that the term "to incite a riot" or "to organize, promote, encourage, participate in, or carry on a riot" "includes, but is not limited to":

[U]rging or instigating other persons to riot, but shall not be deemed to mean the mere oral or written (1) advocacy of ideas or (2) expression of belief, not involving advocacy of any act or acts of violence or assertion of the rightness of, or the right to commit, any such act or acts.

### 1.    Facial Validity of 18 U.S.C. § 2101

The Court first considers Defendants' arguments that § 2101 must be facially invalidated for vagueness, overbreadth, improperly criminalizing incitement, and exceeding Congress's powers under the Commerce Clause.

### i.    Vagueness Challenge

Defendants first assert that § 2101 is void for vagueness because it "fails to give citizens reasonable notice and fails to provide explicit standards for law enforcement and prosecution." (Dkt. 72 at 11). Defendants' argument is two-fold. First, Defendants argue that the statute's definitions of "riot," "incite a riot," and "organize, promote, encourage, participate in, or carry on a riot" are vague. (*Id.* at 13). Second, Defendants contend § 2101 impermissibly requires intent at the moment of interstate travel but not at the time of any subsequent overt acts. (*Id.*).

A criminal statute is void for vagueness under the Fifth Amendment if "it fails to give ordinary people fair notice of the conduct it punishes, or [is] so standardless that it invites arbitrary enforcement." *Johnson v. United States*, 135 S.Ct. 2251, 2256 (2015). "[W]hen a statute interferes with the right of free speech or of association, a more stringent vagueness test should apply." *Holder v. Humanitarian Law Project*, 561 U.S. 1, 19 (2010). "But 'perfect clarity and precise guidance have never been required even of regulations that restrict expressive activity.'" *United States v. Williams*, 553 U.S. 285, 304 (2008) (quoting *Ward v. Rock Against Racism*, 491 U.S. 781, 794 (1989)). *See also Kolbe v. Hogan*, 849 F.3d 114, 148 (4th Cir. 2017) (noting that a "criminal statute need not . . . spell out every possible factual scenario with celestial precision" (internal quotes omitted)).

7

The vagueness inquiry "focuses on the intractability of identifying the applicable legal standard, not on the difficulty of ascertaining the relevant facts in close cases." *Id*. at 149. *See also Williams*, 553 U.S. at 306 ("What renders a statute vague is not the possibility that it will sometimes be difficult to determine whether the incriminating fact it establishes has been proved; but rather the indeterminacy of precisely what that fact is."). Ultimately, the touchstone of the void-for-vagueness inquiry is whether the criminal statute at issue "provide[s] adequate notice to a person of ordinary intelligence that his contemplated conduct is illegal." *United States v. Hager*, 721 F.3d 167, 183 (4th Cir. 2013). Thus, the Supreme Court has "struck down statutes that tied criminal culpability to whether the defendant's conduct" was, for instance, "'annoying' or 'indecent'—wholly subjective judgments without statutory definitions, narrowing context, or settled legal meanings." *Williams*, 553 U.S. at 306.[5]

With respect to the term "riot," Defendants primarily opine that the statutory definition covers not only "public disturbance[s] involving . . . an act or acts of violence," 18 U.S.C. § 2102(a)(1), but also public disturbances involving "a threat or threats of the commission" of such acts of violence by "one or more persons part of an assemblage of three or more persons having, individually or collectively, the ability of immediate execution of such threat[s]." § 2102(a)(2).

---

[5]     The Government contends that Defendants are barred from raising a facial vagueness challenge by "the rule that '[a] plaintiff who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others.'" *Holder*, 561 U.S. at 20 (quoting *Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc.,* 455 U.S. 489, 495 (1982)). However, the Supreme Court has "relaxed that requirement in the First Amendment context." *Williams*, 553 U.S. at 304 (noting that overbreadth challenges are permitted in the First Amendment context but nonetheless analyzing whether the statue at issue was impermissibly vague). *See also Reno v. ACLU*, 521 U.S. 844, 870–74 (1997) (analyzing whether the Communications Decency Act (CDA) was impermissibly vague in part because of "special First Amendment concerns" and in part because "the CDA is a criminal statute"); *Hoffman Estates*, 455 U.S. at 495, n.7 ("[V]agueness challenges to statutes *which do not involve First Amendment freedoms* must be examined in the light of the facts of the case at hand." (emphasis added)). Accordingly, due to the First Amendment implications of Defendants' arguments, the Court will consider Defendants' facial vagueness challenge.

8

Defendants argue that "conduct that constitutes a threat of violence that can be immediately executed is neither adequately defined nor does the case law provide a principled and objective standard to resolve its indeterminacy." (Dkt. 72 at 12). Rather, Defendants contend, "the determination of whether an act constitutes a threat of violence . . . requires an abstract assessment of chance." (*Id.*).

This argument fails. A criminal statute is not void for vagueness simply because it "call[s] for the application of a qualitative standard . . . to real-world conduct; the law is full of instances where a man's fate depends on his estimating rightly . . . some matter of degree." *Johnson*, 135 S.Ct. at 2562. Moreover, the Court cannot say that whether a "public disturbance" involves a "threat" of an "act or acts of violence" fortified by "the ability of immediate execution" calls for "wholly subjective judgments without statutory definitions, narrowing context, or settled legal meanings." *Williams*, 553 U.S. at 306. Indeed, § 2102(a)(2) is itself a statutory definition refining the term "riot," and both "riot"[6] and "threat"[7] have settled legal

---

[6]     The Anti-Riot Act's definition of the term "riot" generally tracks other legal definitions of the term. *See Riot*, Black's Law Dictionary (10th ed. 2014) (defining a riot as (1) "[a]n assemblage of three or more persons in a public place taking concerted action in a turbulent and disorderly manner for a common purpose . . ." and (2) "[a]n unlawful disturbance of the peace by an assemblage of usu. three or more persons acting with a common purpose in a violent or tumultuous manner that threatens or terrorizes the public or an institution"). *See also Alexandre v. City of Miami*, No. 16-23064, 2018 WL 2463094, at *3 (S.D. Fla. June 1, 2018) (noting the "common law definition of riot" as "a tumultuous disturbance of the peace by three or more persons . . ."); *State v. Beasley*, 317 So.2d 750, 753 (Fla. 1975) (rejecting the contention "that the term 'riot' as used at common law is so vague that a citizen of common intelligence must guess at its meaning," and noting that "the term probably has a better common understanding by a citizen tha[n] the term 'disorderly conduct' or 'loitering,'" terms upheld by, respectively, the Supreme Court and the Fourth Circuit).

[7]     *See Threat*, Black's Law Dictionary (10th ed. 2014) (defining "threat" as "[a] communicated intent to inflict harm or loss on another or on another's property, esp. one that might diminish a person's freedom to act voluntarily or with lawful consent; a declaration, express or implied, of an intent to inflict loss or pain on another"). *See also Virginia v. Black*, 538 U.S. 343, 359 (2003) ("True threats encompass those statements where the speaker means to

9

meanings. Accordingly, Defendants have failed to show that the phrase "riot" as defined by § 2102(a) is "so vague that men of common intelligence must necessarily guess at its meaning." *United States v. Horma*, No. 3:18-cr-18, 2018 WL 4214136, at *14 (E.D. Va. Sept. 4, 2018) (quoting *United States v. Lanier*, 520 U.S. 259, 266 (1997)).[8]

Defendants next contend that the terms "incite a riot" and "organize, promote, encourage, participate in, or carry on a riot" are impermissibly "subjective" and "impossible to define from the standards set forth in the statute or the standards in the case law," thereby "fail[ing] to give speakers clear guidance about the forcefulness with which they can advocate for their views before their expression falls within the purview of the statute." (Dkt. 72 at 12–13).

Here again, this argument fails, as none of these terms calls for "wholly subjective judgments without statutory definitions, narrowing context, or settled legal meanings." *Williams*, 553 U.S. at 306. Section § 2102(b) defines the terms as including "urging or instigating other persons to riot," and the terms "urge" and "instigate" have settled meanings the

communicate a serious expression of an intent to commit an act of unlawful violence to a particular individual or group of individuals."); *United States v. White*, 810 F.3d 212, 228 (4th Cir. 2016) (evaluating "true threats" under an objective standard, asking "whether a reasonable recipient familiar with the context would consider the communicated statement a serious expression of an intent to do harm").

[8]    Defendants also take issue with Congress's inclusion of the term "clear and present danger" in § 2102's definition of "riot," arguing under *Johnson v. United States*, 135 S.Ct. 2551 (2015) and *Sessions v. Dimaya*, 138 S.Ct. 1204 (2018) that the statute provides "no clear answer as to how a court should decide what [constitutes] a clear and present danger of injury to person or property." (Dkt. 87 at 18). But, as noted above, the "constitutionality of laws that call for the application of a qualitative standard such as 'substantial risk' to real world-conduct" is not in doubt. *Johnson*, 135 S.Ct. at 2561. Additionally, Defendants briefly suggest that the term "public disturbance" in § 2102(a) is impermissibly vague, (dkt. 87 at 18), but the Court cannot say that this term calls for "wholly subjective judgments without statutory definitions" or "narrowing context" because § 2102(a)(1)-(2) adequately delineates the sort of public disturbances that qualify as "riots" under the Act. *Williams*, 553 U.S. at 306.

average citizen would understand.[9]   Moreover, as will be discussed in greater detail below, §

2102(b) provides further narrowing context by stating that the terms "shall not be deemed to

mean the mere oral or written (1) advocacy of ideas or (2) expression of belief . . . ."

Additionally, these terms all either have a settled legal meaning (*e.g.*, "incite"[10]), or would be

understood by people of common intelligence as carrying the basic meaning of urging a riot (*i.e.*,

"promote" or "encourage"[11]) or undertaking some action in furtherance of a riot (*i.e.*, "organize,"

"participate in," and "carry on"[12]).   "Many long established criminal proscriptions—such as laws

against conspiracy, incitement, and solicitation—criminalize speech . . . that is intended to

induce or commence illegal activities."   *Williams*, 553 U.S. at 298.   Such acts criminalizing

"proposal[s] to engage in illegal activity . . . fall[] well within constitutional bounds."   *Id.* at 299–

300.   In sum, the Court cannot say that the terms "incite a riot" and "organize, promote,

encourage, participate in, or carry on a riot" are unconstitutionally vague.

Finally, Defendants contend that § 2101 is impermissibly vague because the requisite

intent is "required only at the moment of [interstate] travel" but "not at the time of any

subsequent overt acts," thereby allowing the requisite intent to be "frozen at the moment of

interstate travel" and to "then infect any subsequent actions that could be committed without the

---

[9]      *See infra* note 20.

[10]     *See Brandenburg v. Ohio*, 395 U.S. 444, 447–48 (1969).

[11]     *See, e.g., Williams*, 553 U.S. at 300 (noting that the term "promote" as used in statute
criminalizing pandering and solicitation of child pornography referred to activity beyond "mere
advocacy"); *United States v. Taber*, 497 F.3d 1177, 1181 (11th Cir. 2007) ("The term
'encourage' is defined, '[t]o instigate; to incite to action; to embolden; to help." (citing
*Encourage*, Black's Law Dictionary (8th ed. 2004)).

[12]     *See, e.g., Borden v. School Dist. of Tp. of East Brunswick*, 523 F.3d 153, 167 (3d Cir.
2008) (rejecting argument that word "participate" was "so vague that people of common
intelligence" would have to "'guess at [its] meaning'" in part because of the Supreme Court's
reliance on the term "nonparticipatory" "without a definition of what the word 'participate'
means" in *Bd. of Educ. of Westside Cmty. Sch. v. Mergens*, 496 U.S. 226 (1990)).

11

specific criminal intent." (Dkt. 72 at 13). Defendants argue that this alleged "attenuation between the *mens rea* and *actus reus* means there is no fair warning and clearly discernible standard for application" of the statute. (*Id*.). Although this argument does not necessarily belong under the void-for-vagueness umbrella, it fails nonetheless.

Section 2101(a) requires that a defendant "travel in interstate or foreign commerce or use[] any facility of" such commerce "*with intent*" to do one of the four items listed thereafter, and then "either during the course of any such travel or use or thereafter" perform or attempt to perform an overt act "*for any purpose*" specified on the aforementioned list. 18 U.S.C. § 2101(a) (emphasis added). Other courts have interpreted the statute as requiring a substantially similar intent both at the point of interstate travel or the use of facilities thereof and at the time of the requisite overt act(s),[13] and the Court finds these longstanding interpretations of § 2101 persuasive. Thus, the Court rejects Defendants' arguments that "attenuation between the *mens rea* and *actus reus*" renders § 2101 void for vagueness. (Dkt. 72 at 13). To gain a conviction under § 2101, the Government must prove that Defendants had "an intent with a riot as the objective . . . at both junctures," and that the nature of the "riot contemplated at the time of travel" was "sufficiently similar so that it is reasonable to say the later is the same as or the

---

[13]    *See, e.g., United States v. Markiewicz,* 978 F.2d 786, 813 (2d Cir. 1992) (noting that the Anti-Riot Act "requires the government to prove a defendant's intent at two points in time—when the defendant uses a facility of interstate commerce with the intent to incite a riot, and when the defendant commits an overt act to further any of the purposes articulated in subparagraphs (A) through (D)"); *United States v. Dellinger*, 472 F.2d 340, 393–94 (7th Cir. 1972) (holding that "an intent with a riot as the objective is required at both junctures," and that the "situation, nature, and details of the riot contemplated at the time of travel" must be "sufficiently similar so that it is reasonable to say the later is the same as or the evolving product of the one intended earlier"); *United States v. Hoffman*, 334 F.Supp. 504, 509 (D.D.C. 1971) (finding that "§ 2101, when viewed with the indictment in this case, does not violate due process by authorizing conviction where the unlawful intent and the prohibited act do not coincide").

evolving product of the one intended earlier." *United States v. Dellinger*, 472 F.2d 340, 393–94 (7th Cir. 1972).

In sum, the Court rejects Defendants' arguments that § 2101 is void for vagueness.

### ii. Overbreadth Challenge

Defendants next argue that § 2101 is facially overbroad because it "regulates a substantial amount of protected First Amendment activity." (Dkt. 72 at 15). Specifically, Defendants contend that § 2101 "impermissibly infringes on freedom of assembly" by "equat[ing] organized assemblies with organized violence" and "impermissibly infringes on freedom of speech." (*Id.* at 14).[14] The Government responds that § 2101 is not facially overbroad because it "only criminalizes violent action, threats of violence, or incitement to violence," which "have never been afforded protection under the First Amendment." (Dkt. 79 at 18–19).

Under the "First Amendment overbreadth doctrine, a statute is facially invalid if it prohibits a substantial amount of protected speech." *Williams*, 553 U.S. at 292. Since enforcement of an overbroad statute is "totally forbidden," invalidation for overbreadth is "strong medicine" that should be used "sparingly and only as a last resort." *Am. Entertainers, LLC v. City of Rocky Mount, N.C.*, 888 F.3d 707, 715 (4th Cir. 2018) (quoting *Broadrick v. Oklahoma*, 413 U.S. 601, 613 (1973)). An overbreadth challenge only succeeds if (1) the challenged provision's overbreadth is "real" and "substantial," judged in relation to the provision's "plainly legitimate sweep," and (2) "no limiting construction or partial invalidation could remove the seeming threat or deterrence to constitutionally protected expression." *Id.*

---

[14]     The Court notes that Defendants' overbreadth argument is sparse and often conclusory, (*see, e.g.*, dkt. 72 at 14–15), making it difficult to discern the exact contours of the argument. For instance, after a few sentences arguing that § 2101 "impermissibly infringes on freedom of assembly," Defendants state without any supporting analysis or further elucidation: "Second, the act impermissibly infringes on freedom of speech." (*Id.* at 14).

13

(internal quotations omitted).[15]  The "mere fact that one can conceive of some impermissible applications of a statute is not sufficient to render it susceptible to an overbreadth challenge." *Williams*, 442 U.S. at 303 (quoting *Members of City Council of Los Angeles v. Taxpayers for Vincent*, 466 U.S. 789, 800 (1984)).  Although "every reasonable construction must be resorted to, in order to save a statute from unconstitutionality . . . narrowing constructions are only appropriate when the text or other source of congressional intent indentifies a clear line that a court could draw."  *Legend Night Club v. Miller*, 637 F.3d 291, 300–01 (4th Cir. 2011) (internal quotations and citations omitted).

At the outset, the Court notes that neither Defendants nor the Government have explicitly addressed what level of scrutiny the Court should apply to § 2101 in addressing Defendants' overbreadth challenge.  "The level of First Amendment scrutiny a court applies to determine the 'plainly legitimate sweep' of a regulation depends on the purpose for which the regulation was adopted."  *Am. Entertainers,* 888 F.3d at 715.  If the provision at issue "was adopted for a purpose unrelated to the suppression of expression—e.g., to regulate conduct, or the time, place, and manner in which expression may take place—a court must apply . . . intermediate scrutiny." *Id*.  Under intermediate scrutiny, a statute will be upheld "if it furthers an important or substantial governmental interest; if the governmental interest is unrelated to the suppression of free expression; and if the incidental restriction on alleged First Amendment freedoms is no greater than is essential to the furtherance of that interest."  *Id*.

---

[15]     *See also New York v. Ferber*, 458 U.S. 747, 769 (1982) ("When a federal court is dealing with a federal statute challenged as overbroad, it should, of course, construe the statute to avoid constitutional problems, if the statute is subject to such a limiting construction. . . . Furthermore, if the federal statute is not subject to a narrowing construction and is impermissibly overbroad, it nevertheless should not be stricken down on its face; if it is severable, only the unconstitutional portion is to be invalidated.").

14

Before turning to this tiered-scrutiny framework, "[t]he first step in overbreadth analysis is to construe the challenged statute; it is impossible to determine whether a statute reaches too far without first knowing what the statute covers." *Williams*, 553 U.S. at 293. The Court's construction of § 2101 is largely informed by other judicial constructions of the Act.[16] "In summary, Congress has made it a crime if there is an intent to promote a riot at the time of use of interstate or foreign facilities and at that time or thereafter, the additionally-required overt acts are committed." *In re Shead*, 302 F.Supp. 560, 565 (N.D. Ca. 1969). "This intent must be to promote, and the overt acts must be committed for the purpose of promoting" a riot as defined in 18 U.S.C. § 2102(a). *Id*. The overt acts covered include either acts of violence in furtherance of a riot, incitement of a riot, other "urging or instigating" of a riot, or aiding and abetting others in doing the same. *See* 18 U.S.C. §§ 2101(a)(1)-(4); 2102(b). As discussed in the next subsection concerning incitement, § 2102(b) excludes pure "advocacy of ideas" and "expressions of belief" from § 2101's ambit, and the Court does not construe the §§ 2101, 2102 as proscribing the mere advocacy of violence. *See Dellinger*, 472 F.2d at 363; *In re Shead*, 302 F.Supp. at 566.

Under this construction, § 2101 only regulates either violence committed in furtherance of a riot or the unprotected incitement or instigation of a riot. Thus, § 2101 is appropriately

---

[16]    Defendants attempt to dismiss the relevance of prior judicial interpretations of § 2101 by referring to them as a "familiar roster of four, forty-five years old cases," (dkt. 87 at 18), but prior interpretations of the Act provide critical context for how the statute has been understood, both near the time of its passage and in the intervening decades. Defendants also opine that "the Government asks this Court *to be the first court in 45 years* to uphold the constitutionality" of § 2101. (Dkt. 87 at 1 (emphasis in original)). But as between the parties, Defendants make the bolder request, asking this Court to facially invalidate a criminal statute uniformly upheld by other courts. Relatedly, the Government suggested at oral argument that the Court could rest easy with respect to Defendants' First Amendment challenges because prosecutions under § 2101 have been rare. This argument has no merit. *See United States v. Stevens,* 559 U.S. 460, 480 (2010) ("[T]he First Amendment protects against the Government; it does not leave us at the mercy of the *noblesse oblige.* We would not uphold an unconstitutional statute merely because the Government promised to use it responsibly.").

15

reviewed under only intermediate scrutiny.[17]  *Am. Entertainers*, 888 F.3d at 715.  The Court

finds that § 2101 "materially advances" Congress's substantial interest in "keep[ing] the

channels of interstate commerce free from immoral and injurious uses," namely uses that

facilitate riotous disturbances involving violence or threats of violence backed up by "immediate

execution."  *United States v. Gould*, 568 F.3d 459, 471 (4th Cir. 2009) (quoting *Heart of Atlanta

Motel, Inc. v. United States*, 379 U.S. 241, 256 (1964)); 18 U.S.C. 2102(a).  *See also United

States v. Masciandaro*, 638 F.3d 458, 473 (4th Cir. 2011) (noting that the "government's interest

in public safety" has been described as "compelling," and citing Supreme Court decisions

referring to the "significant governmental interest in public safety" and the "Federal

Government's compelling interests in public safety").

Moreover, § 2101 is "narrowly tailored to serve" this interest, criminalizing only travel in

interstate or foreign commerce (or use of a facility thereof) with the requisite intent to either

undertake acts of violence in furtherance of a riot or to engage in some form of incitement or

instigation of a riot, coupled with either contemporaneous or subsequent overt acts committed for

a substantially similar purpose.  *Am. Entertainers*, 888 F.3d at 715; *see also Dellinger*, 472 F.2d

at 393–94.  As discussed in further detail below, § 2101 does not proscribe mere advocacy of

violence and explicitly excludes from its ambit the "mere oral or written . . . advocacy of ideas or

. . . expression of belief."  18 U.S.C. § 2102(b).  The Act's proscription of use of interstate or

foreign facilities with the intent to commit acts of violence in furtherance of a riot or to incite or

instigate a riot, coupled with overt acts committed for those purposes, does not render the statute

---

[17]     Apart from statements that the Anti-Riot Act was adopted to address "social unrest in the
nation's cities after the assassination of Dr. Martin Luther King, Jr." and commentary about the
legislative intent underlying Congress's passage of the D.C. Riot Act, (dkt. 72 at 18–19),
Defendants have presented no evidence or argument that the Act was "adopted to burden
disfavored viewpoints or modes of expression."  *Giovani Carandola, Ltd. v. Bason*, 303 F.3d
507, 512 (4th Cir. 2002).  Thus, the Court will not review § 2101 under strict scrutiny.

16

overbroad, as the First Amendment protects neither violence nor the incitement of violence.  *See, e.g., N.A.A.C.P. v. Claiborne Hardware Co.*, 458 U.S. 886, 916, 927 (1982) (noting that the "First Amendment does not protect violence," fighting words "that provoke immediate violence," "words that create an immediate panic," or incitement); *Ostergren v. Cuccinelli*, 615 F.3d 263, 271 (4th Cir. 2010) (noting that "incitement of illegal activity" is among "certain categories of 'unprotected' speech that may be circumscribed entirely"); *Am. Life League, Inc. v. Reno*, 47 F.3d 642, 648 (4th Cir. 1995) (noting that the "use of force or violence is outside the scope of First Amendment protection," as are "[t]rue threats of force").

The Court finds no merit in Defendants' contention that § 2101 "equates organized assemblies with organized violence" or impermissibly chills expressive conduct by "endorsing the prosecution of political protest."  (Dkt. 72 at 14–15).  The Act does not criminalize peaceful protest or lawful assembly but rather targets "public disturbance[s] involving" violence or the threat of such violence undergirded by the "ability of immediate execution."  18 U.S.C. § 2102(a).  Moreover, although § 2101 may well permit the prosecution of acts of violence or incitement thereof committed by riotous assemblages in the midst of an otherwise lawful protest, it does not permit the "prosecution of political protest" not involving such acts.  (Dkt. 72 at 15).  Further elucidation of this point is provided below with respect to Defendants' as-applied challenge.

In sum, the Court rejects Defendants' argument that § 2101 is facially invalid for overbreadth under the First Amendment.

### iii. *Brandenburg* Challenge[18]

In their third facial challenge, Defendants assert that § 2101 fails to "satisfy the stringent First Amendment requirements for criminalizing incitement" established in *Brandenburg v. Ohio*, 395 U.S. 444 (1969). (Dkt. 72 at 15). In *Brandenburg*, 395 U.S. at 447–48, the Supreme Court invalidated the Ohio Criminal Syndicalism Act, finding that the Act's "bald" proscription of "mere advocacy" of violent or lawless action violated the principle that the First Amendment "do[es] not permit a State to forbid or proscribe advocacy of the use of force or of law violation except where such advocacy is directed to inciting or producing imminent lawless action and is likely to incite or produce such action." Under the *Brandenburg* incitement test, speech may not be "sanctioned as incitement to riot unless (1) the speech explicitly or implicitly encouraged the use of violence or lawless action, (2) the speaker intends that his speech will result in the use of violence or lawless action, and (3) the imminent use of violence or lawless action is the likely result of his speech." *Bible Believers v. Wayne Cty., Mich.*, 805 F.3d 228, 246 (6th Cir. 2015).

Defendants contend that "[t]he Anti-Riot Act simply does not require imminence or likelihood" because a defendant's "travel does not need to be linked in time to the rioting" and the "Act does not require that a riot even occur." (Dkt. 87 at 11; *see also* dkt. 72 at 16–17). Defendants also appear to argue that the Act explicitly proscribes mere advocacy of violence, pointing to 18 U.S.C. § 2102(b)'s definition of "to incite a riot" or "to organize, promote,

---

[18] Defendants presented their incitement arguments as a freestanding First Amendment challenge, rather than as part of their overbreadth challenge. (Dkt. 72 at 15–18). The Government analyzed Defendants' incitement arguments as part of their overbreadth challenge. (Dkt. 79 at 18, n.4). Although "closely related," (dkt. 87 at 9), the two arguments are technically distinct, and so the Court will analyze them separately, as Defendants elected to present them. *See Draego v. City of Charlottesville, Va.*, No. 3:16-cv-00057, 2016 WL 6834025, at *20, n.18 (W.D. Va. Nov. 18, 2016) ("An overbreadth challenge is 'a second type of facial challenge' separate and apart from one on general First Amendment grounds.") (quoting *United States v. Stevens*, 559 U.S. 460, 473 (2010)).

Case 3:18-cr-00025-NKM-JCH   Document 104   Filed 05/02/19   Page 18 of 31   Pageid#: 598

encourage, participate in, or carry on a riot," which states that these terms "shall not be deemed to mean the mere oral or written (1) advocacy of ideas or (2) expression of belief, *not involving advocacy of any act or acts of violence or assertion of the rightness of, or the right to commit, any such act or acts*." (Dkt. 72 at 16 (emphasis in original)).[19]

As outlined above, to violate § 2101, a person must use a facility of interstate or foreign commerce with the intent "(1) to incite a riot; or (2) to organize, promote, encourage, participate in, or carry on a riot; or (3) to commit any act of violence in furtherance of a riot; or (4) to aid or abet any person in inciting or participating in or carrying on a riot or committing any act of violence in furtherance of a riot," and then either during the time of "use or thereafter" perform or attempt "any other overt act" for any of these four purposes. 18 U.S.C. § 2101(a). Section 2101(a)(3)—"commit[ting] any act of violence in furtherance of a riot"—plainly "requires action," as does § 2101(a)(4)'s proscription of "aid[ing] or abet[ting] any person in . . . participating in or carrying on a riot or committing any act of violence in furtherance of a riot." *Dellinger*, 472 F.2d at 361. Indeed, these terms all appear to "logically require that the riot occur, at least to the extent specified in § 2102(a)(2)." *Id*. The question, then, is whether to "incite," "organize," "promote," "encourage" or aid and abet any person in "inciting" a riot requires a sufficiently close relationship to imminent violence or lawless action as to comply with the *Brandenburg* incitement test. *See* 18 U.S.C. § 2101(1), (2), (4).

For several reasons, the Court concludes that the Act "adequately establishes the required relation to action" such that Defendants' facial challenge under *Brandenburg* fails. *Dellinger*,

---

[19]    Defendants note this italicized portion of § 2102(b) but provide no explicit argument about how this language should be interpreted. (Dkt. 72 at 16). Given that other courts have entertained similar arguments about this phrase in prior interpretations of the Anti-Riot Act, *see, e.g., Dellinger*, 472 F.2d at 363, the Court will construe Defendants' emphasis on this phrase as an argument that the Act affirmatively proscribes mere advocacy of violence or "assertion of the rightness of, or the right to commit," violence. 18 U.S.C. § 2102(b).

Case 3:18-cr-00025-NKM-JCH   Document 104   Filed 05/02/19   Page 19 of 31   Pageid#: 599

472 F.2d at 361. First, the terms "incite," "organize," "promote," and "encourage" are "treated alike in § 2102(b), and each 'includes, but is not limited to, urging or instigating other persons to riot.'" *Id.* In *Dellinger,* the Seventh Circuit concluded that the "threshold definition of all [of these] categories as 'urging or instigating' puts a sufficient gloss of propulsion [to action] on the expression described." *Id.* at 362. This interpretation comports with dictionary definitions of "urge" and "instigate."[20] Second, "the exclusion in § 2102(b) of 'the mere oral or written (1) advocacy of ideas or (2) expressions of belief . . .' can be taken to indicate an awareness by the drafters of the necessity of avoiding categories which do not relate to action." *Id.*

Third, § 2102(a) defines a "riot" as a "public disturbance involving" either acts of violence constituting a "clear and present danger" to people or property or "threats" of such violence by individuals with "the ability of immediate execution" of such threats, where the performance of the threatened acts "would constitute a clear and present danger" to people or property. "If the disturbances" urged or instigated must "constitute a clear and present danger, the overt acts themselves which are committed for that purpose, necessarily must also constitute a clear and present danger." *In re Shead*, 302 F.Supp. at 566. Accordingly, the Court finds that "the conduct condemned by 18 U.S.C. [§] 2101" is "sufficiently limit[ed]" to "'advocacy of the use of force or of law violation where such advocacy is directed to inciting or producing imminent lawless action and is likely to incite or produce such action.'" *Id.* (quoting *Brandenburg*, 395 U.S. at 448)).

---

[20]     *See, e.g.*, *Dellinger*, 472 F.2d at 361–62 (noting that "[n]early all definitions" of "urge" "suggest an impelling beyond mere persuasion," and citing one dictionary definition of "urge" as "a pressing, impelling, seeking to influence, or overcoming some obstacle, check, or drawback to a certain course"); *Instigate*, Black's Law Dictionary (10th ed. 2014) (defining "instigate" as "[t]o goad or incite (someone) to take some action or course").

With respect to the challenged clause of § 2102(b)—noting that the terms defined there "shall not be deemed to mean the mere oral or written (1) advocacy of ideas or (2) expression of belief, *not involving advocacy of any acts of violence or assertion of the rightness of, or the right to commit, any such act or acts*"—the Court echoes prior decisions interpreting the Act in finding that the clause does not affirmatively criminalize mere advocacy of violence.  18 U.S.C. § 2102(b) (emphasis added); *Dellinger*, 472 F.2d at 363; *In re Shead*, 302 F.Supp. at 566. Section 2102(b) effectuates "the total exclusion of expression not involving advocacy of violence whether or not the intent and required overt acts fall within the coverage of 18 U.S.C. [§§] 2101(a), 2102(a)," but this exclusion does not "require[] an interpretation that 'mere advocacy of violence' is made a crime."  *In re Shead*, 302 F.Supp. at 566.  "Such an interpretation would require that the language actually used by Congress"—'shall not be deemed to mean . . . advocacy of ideas . . . not involving advocacy of any act of . . . violence'—be changed by substituting the phrase 'except when' for the term 'not.'"  *Id.*[21]  Under this construction, § 2101 is quite distinct from the Ohio Criminal Syndicalism Act, which explicitly punished mere advocacy of violence.  *See Brandenburg*, 395 U.S. at 448–49; *United States v. Stone*, No. 10-20123, 2011 WL 795164, at *4 (E.D. Mich. Mar. 1, 2011) (noting same).

Both the indictment and the possibility of a clarifying jury instruction also distinguish this case from *Brandenburg*, 395 U.S. at 448–49, where the Court noted that "[n]either the indictment nor the trial judge's instructions to the jury in any way refined the statute's bald definition of the crime in terms of mere advocacy not distinguished from incitement to imminent

---

[21]     *See also Dellinger*, 472 F.2d at 363 (assuming that the drafters recognized "that a truly inciting, action-propelling speech will include advocacy of acts of violence and assertion of the rightness of such acts" and therefore meant the challenged phrase to "forestall any claim by such speaker that in that context such advocacy and assertion constitute mere advocacy of ideas or expression of belief excluded under (1) and (2)").

lawless action."  Here, nothing in the indictment or briefing indicates that the Government seeks

to prosecute Defendants for mere advocacy of violent or lawless action unconnected to an actual

or imminent riot.  Rather, the indictment alleges that Defendants "incited, promoted, encouraged,

participated in, and carried on in a riot, committed acts of violence in furtherance of a riot, and

aided and abetted other persons" in doing the same at two riots that allegedly came to fruition on

August 11–12, 2017.  (*See, e.g.,* dkt. 8 ¶¶ 10(k), 10(n)).  Moreover, if this case proceeds to trial,

the Court can instruct the jury that Defendants may only be convicted under § 2101 for

advocating violent or lawless action, or the rightness thereof, if "such advocacy [was] directed to

inciting or producing imminent lawless action and [was] likely to incite or produce such action."

*Brandenburg*, 395 U.S. at 447.

In sum, the Court rejects Defendants' facial challenge under *Brandenburg*.

### iv.    Commerce Clause Challenge

In their final facial challenge, Defendants contend that § 2101 "exceeds Congress's

Commerce Clause authority."  (Dkt. 72 at 20).  Although Defendants concede that "existing

precedent affirms 'travel with intent' statutes as valid constructions of [C]ommerce [C]lause

authority," they nonetheless ask the Court to "reconsider the propriety of the jurisdictional hook

in a case such as this where the regulated conduct is local in nature."  (*Id*. at 21).  Arguing that §

2101 "has nothing to do with 'commerce' or any sort of economic enterprise," Defendants

analogize § 2101 to the Gun-Free School Zones Act invalidated by the Supreme Court in *United

States v. Lopez*, 514 U.S. 549 (1995).  (*Id*. at 21–22).

This argument is devoid of merit.  "Under the Commerce Clause, Congress has authority

to regulate (1) the use of the *channels* of interstate commerce, (2) the *instrumentalities* of

interstate commerce, or persons or things within interstate commerce, even though the threat

may come only from intrastate activities, and (3) those activities having a *substantial relation* to interstate commerce." *United States v. Gould*, 568 F.3d 459, 470 (4th Cir. 2009) (quoting *United States v. Morrison*, 529 U.S. 598, 609 (2000)). Defendants' reliance on *Lopez* is entirely misplaced, as the Gun-Free School Zones Act was premised on Congress's authority over activities "having a substantial relation to interstate commerce" (*i.e.*, "those activities that substantially affect interstate commerce"). 514 U.S. at 559. By contrast, § 2101 stems from Congress's power to regulate the channels and instrumentalities of interstate commerce and, more specifically, "persons in interstate commerce." *Gould*, 568 F.3d at 471. *See also Heart of Atlanta Motel,* 379 U.S. at 256 (noting that Congress has the power to "keep the channels of interstate commerce free from immoral and injurious uses" (quoting *Caminetti v. United States,* 242 U.S. 470, 491 (1917)); *United States v. Hoffman*, 334 F.Supp. 504, 509 (D.D.C. 1971) (upholding § 2101 as valid exercise of Congress's power under the Commerce Clause).

Defendants' argument that § 2101 "seeks to punish inherently local activity" is baseless, as the Act plainly requires that a defendant travel in or use a facility of interstate or foreign commerce with the requisite intent. *See* 18 U.S.C. 2101(a). Indeed, Defendants concede the point, noting that "[t]o obtain a conviction under the Anti-Riot Act, the Government must prove that a defendant travelled in interstate commerce or used a facility of interstate commerce." (Dkt. 72 at 20). "As a result, any defendant subject to criminal liability under" § 2101 "qualifies as 'a person in interstate commerce'; and is therefore subject to regulation by Congress." *United States v. Dean*, 670 F.Supp.2d 457, 459 (E.D. Va. 2009). Similarly, Defendants' argument that the conduct alleged in the indictment "is local in nature" is belied by the plain text of the indictment, (dkt. 8 ¶¶ 10(f)-(h), 13), and by Defendants' own concession that they are alleged to have "violated the Anti-Riot Act by traveling in interstate commerce." (Dkt. 72 at 20).

23

In sum, all four of Defendants' facial challenges of 18 U.S.C. § 2101 fail.[22]

### 2. As-Applied-Challenge to § 2101

Defendants also mount an as-applied challenge, contending that the "First Amendment precludes § 2101 from applying to disorders arising from political demonstrations like the one [Defendants] attended in Charlottesville." (Dkt. 72 at 18). In support of this argument, Defendants point to *United States v. Matthews*, 419 F.2d 1177, 1182 (D.C. Cir. 1969), where the D.C. Circuit framed the D.C. Riot Act as focusing on "mindless, insensate violence and destruction unredeemed by any social value and serving no legitimate need for political expression," rather than "disorders []related to political demonstrations."

Defendants' as-applied challenge fails. Although the indictment contains indicia that some protected expression may have occurred at the two alleged riots on August 11–12, 2017, (*see, e.g.*, dkt. 8 ¶¶ 1–3), the indictment does not seek to punish Defendants for engaging in peaceful protest or pure political expression. Rather, the indictment charges Defendants with interstate travel followed by incitement of, and acts of violence at, the two alleged riots, as well as with conspiracy to commit this offense. (*Id*. ¶¶ 9, 10(k), 10(n), 13).

Defendants offer no precedent to support the proposition that the First Amendment immunizes violence or incitement from criminal prosecution simply because such conduct occurs within the broader context of a political demonstration. To be sure, "[t]he right to peaceful protest lies near the heart of the freedom of speech," but "[t]he use of force or violence is outside the scope of First Amendment protection," *Am. Life League*, 47 F.3d at 648, as is incitement of violent or lawless action. *See Holder*, 561 U.S. at 43–44; *Brandenburg*, 395 U.S.

---

[22] Because the Court rejects Defendants' arguments that 18 U.S.C. § 2101 must be facially invalidated for vagueness and overbreadth, it also rejects Defendants' cursory argument that Count One—alleging a conspiracy to violate § 2101—is, by extension, "unconstitutionally vague[] [and] overbroad." (Dkt. 72 at 25).

24

at 447.  *See also Claiborne Hardware Co.*, 458 U.S. at 911–12 (noting that the mere "presence of protected activity" at a boycott did not "end the relevant constitutional inquiry" or prevent tort liability for losses "caused by violence and by threats of violence" that occurred within the "context of constitutionally protected activity"); *Sines v. Kessler*, 324 F.Supp.3d 765, 802–03 (W.D. Va. 2018) ("Of course, *peaceful* picketing . . . and *peaceful* marching . . . are the sorts of expressive activities that are protected by the First Amendment . . . [b]ut the First Amendment does not protect violence." (citations omitted)).  Accordingly, Defendants' argument that the First Amendment "precludes 18 U.S.C. § 2101 from applying to disorders arising from political demonstrations" is unsupported and without merit.[23]  (Dkt. 72 at 18).

## C.    Validity of the Indictment

Having rejected Defendants' facial challenges to 18 U.S.C. § 2101, the Court now turns to Defendants' attacks on the indictment.  Specifically, Defendants argue that the indictment must be dismissed because: (1) the factual allegations in Count One and Count Two are insufficient to state an offense under either § 2101 or 18 U.S.C. § 371; and (2) Wharton's Rule prohibits Count One's conspiracy charge under § 371.  All of these arguments fail.

---

[23]      Defendants also briefly contend that "[a]s applied to [Defendants], § 2101 . . . cannot pass the test for incitement" because the indictment contains no allegations that Defendants' "subjective intent was to incite a riot" or that Defendants "'prepared a group for violent action and steel[ed] it to such action.'"  (Dkt. 72 at 20 (quoting *Brandenburg*, 395 U.S. at 444)).  This argument is without merit, as the indictment plainly alleges Defendants possessed "intent . . . to incite a riot," (dkt. 8 ¶ 13), and includes factual allegations that could bear on whether Defendants intended  to incite a riot, such as Defendants' alleged purchase of athletic tape and baseball helmets prior to the alleged August 11, 2017 riot on the grounds of UVA, (*id.* ¶ 10(i)), and alleged "wrapping [of] their hands with athletic tape" prior to the alleged August 12, 2017 riot in and around Emancipation Park, (*id.* ¶ 10(l)).  Moreover, as discussed in the next subsection, the Government is not required to define terms like "incitement" in exquisite detail, and the indictment's factual allegations of incitement are sufficient to give Defendants notice of the charges against them.  Finally, because the Court rejects Defendants' as-applied arguments with respect to § 2101, it also rejects Defendants' cursory as-applied argument regarding Count One's conspiracy charge under 18 U.S.C. § 371.  (Dkt. 72 at 25).

### 1.    Counts One & Two – Sufficiency of Factual Allegations

Defendants contend that both Count One and Count Two of the indictment contain insufficient factual allegations to state an offense.  Because the bulk of this argument is discussed in relation to Count Two, which alleges the violation of § 2101 underlying the conspiracy charge in Count One, the Court begins with Count Two.  Defendants aver that Count Two contains insufficient factual allegations that Defendants incited or participated in a riot, committed acts of violence in furtherance of a riot, aided and abetted others in the same, or traveled in interstate commerce with the specific intent of doing any of these things.  (Dkt. 72 at 7–10).  This argument fails.

Count Two "contain[s] the elements of the offense charged, fairly inform[s] [Defendants] of the charge, and enable[s] [Defendants] to plead double jeopardy as a defense in a future prosecution for the same offense." *Palin*, 874 F.3d at 423–24.  Count Two alleges that Defendants "travelled in interstate commerce from California to Charlottesville" "[o]n or about August 11, 2017," (dkt. 8 ¶ 13), and the indictment elsewhere makes clear that this travel took place in the form of "commercial flights . . . from Los Angeles and San Francisco." (*Id*. ¶ 10(h)). Count Two further alleges that Defendants travelled "with intent" to incite, organize, promote, encourage, participate in, carry on, and commit an act of violence in furtherance of a riot, as well as to aid and abet others doing the same. (*Id*. ¶ 13).  Lastly, Count Two alleges at least two overt acts committed "in furtherance of a riot" after the aforementioned interstate travel, namely inciting, promoting, encouraging, participating in, and carrying on in a riot, and committing "acts of violence in furtherance of a riot" (1) "[o]n or about the evening of August 11, 2017, on or around the grounds of [UVA]," and (2) "[o]n or about August 12, 2017, in and around the vicinity of Emancipation Park."  (*Id*. ¶¶ 13(a)-(b); *see also id*. ¶ 10 (listing all alleged over acts)).

26

Count Two's factual allegations cover "every essential element of" the Anti-Riot Act. *Kingrea*, 573 F.3d at 191. Moreover, Count Two does not "simply parrot[] the language" of the Act. *Brandon*, 298 F.3d at 310. Although Count Two is not as factually detailed as Defendants would like,[24] it provides a "statement of the *essential facts* constituting the offense charged," and any recitation of the statutory language is "accompanied with such a statement of the facts and circumstances" surrounding Defendants' interstate travel and overt acts as to effectively "inform the accused of the specific offence" charged. *Id.* (emphasis in original). *See also United States v. Witasick*, No. 4:07-cr-00030, 2008 WL 1924023, at *2 (W.D. Va. Apr. 28, 2008) (noting that indictments are only defective if they "fail to specify the nature of the accusations, rather than merely omitting evidentiary details regarding a 'purely factual issue.'"). Although Defendants are correct that the indictment does not spell out the statutory definitions for "riot," inciting" a riot, or "promoting" a riot, (dkt. 87 at 4–5), Defendants cite no authority establishing that such definitional precision is required. The indictment "fairly inform[s]" Defendants of the charge that they travelled in interstate commerce with the requisite intent and committed overt acts in

---

[24]      Specifically, Defendants opine that the factual allegations in Count Two do not "identify the contours of the 'riot' that is alleged to be at the heart of these charges," contain "any specific facts" regarding acts of violence Defendants committed, "establish" that Defendant "did or said anything" to incite a riot, "sufficiently allege that [Defendants] participated in or carried on in a riot," allege that that Defendants traveled in interstate commerce with the requisite intent, or specifically allege that Defendants aided or abetted anyone in relation to a riot. (Dkt. 72 at 9–10). As described above, many of these conclusory arguments are belied by a plain reading of the indictment, which specifically alleges that Defendants travelled in interstate commerce with the requisite intent, (dkt. 8 ¶ 13), as well as when and where the alleged riots and overt acts occurred, (*see, e.g., id.* ¶¶ 10, 13(a)-(b)). The Government need only provide the "essential facts" of the charged offense under Fed. R. Crim. P. 7(c)(1), and the indictment here meets that standard. Moreover, the indictment need not "enumerate every possible . . . factual theory of defendants' guilt," *United States v. Am. Waste Fibers, Co., Inc.*, 809 F.2d 1044, 1047 (4th Cir. 1987), or spell out the exact "method by which the crime was committed." *Stroud v. Polk*, 466 F.3d 291, 297 (4th Cir. 2006).

furtherance of two alleged riots on August 11–12, 2017, (dkt. 8 ¶ 13). *Palin*, 874 F.3d at 423. No more is required.

With respect to Count One's charge of a conspiracy to violate § 2101, Defendants argue that this count "does not allege sufficient facts to establish that [Defendants] knowingly and voluntarily participated in an *agreement* with the intent to commit a criminal objective." (Dkt. 72 at 24 (emphasis in original)). Moreover, Defendants further contend that Count One must be dismissed because it "fails to allege any of the elements of the [underlying] Anti-Riot offense." (Dkt. 87 at 3–4). The essential elements of 18 U.S.C. § 371 are "(1) an unlawful agreement between two or more people to commit a crime; (2) that the defendant knowingly and willingly participated in that conspiratorial endeavor; and (3) an overt act committed in furtherance of the conspiracy." *United States v. Mbendeke*, 750 F. App'x 202, 204 (4th Cir. 2018) (quoting *United States v. Vinson*, 852 F.3d 333, 352 (4th Cir. 2017)). *See also United States v. Cone*, 714 F.3d 197, 213 (4th Cir. 2013) (same).

Here again, Defendants' arguments are contradicted by a plain reading of the indictment. Count One plainly alleges that Defendants "knowingly and willfully conspire[d], combine[d], confederate[d], and agree[d] together" to violate the Anti-Riot Act. (Dkt. 8 ¶ 9). The indictment further alleges numerous overt acts committed in furtherance of the conspiracy. (*Id*. ¶¶ 10(a)-(o)). Moreover, Count One plainly alleges the elements of the underlying Anti-Riot Act offense. (*Id*. ¶ 9). Although Defendant may be dissatisfied with the level of factual detail provided in Count One, "[t]he Supreme Court has held that where conspiracy is the 'gist of the crime' all that is necessary in the indictment is that the object of the conspiracy be set forth sufficiently to identify the offense which the defendant is charged with conspiring to commit." *Matzkin,* 14 F.3d at 1019 (citing *Wong Tai v. United States,* 273 U.S. 77, 81 (1927)). Count One satisfies that

28

standard. Thus, the Court finds Count One's factual allegations sufficiently specific to state an offense under 18 U.S.C. § 371.

In closing, the Court notes that, although Defendants raise many complaints about the indictment's factual specificity, Defendants nowhere explicitly contend that the indictment is so vague or factually deficient that they cannot mount a defense or "plead the Double Jeopardy bar to reprosecution if [they are] later charged with the same offense." *United States v. Am. Waste Fibers, Co., Inc.*, 809 F.2d 1044, 1046 (4th Cir. 1987) (identifying these as "the dual purpose of an indictment"). Moreover, Defendants have not moved for a bill of particulars, which is the "proper course" if "the indictment does not provide enough information to enable [Defendants] to prepare [their] defense." *Id.* (noting that an "indictment notifies" a defendant "of the offenses with which [he] has been charged," while the "bill of particulars, if granted, serves to supply the evidentiary details needed to prepare a defense").

In sum, "[a]pplying a liberal standard in support of sufficiency," the factual allegations in both Count One and Count Two are sufficiently specific to state an offense under § 371 and § 2101, respectively. *Matzkin*, 14 F.3d at 1019.

## 2. Count One – Wharton's Rule Challenge

Defendant's final argument with respect to Count One is that "Wharton's Rule bars a separate conspiracy charge where the underlying crime requires collective action," a circumstance Defendants contend is present here because under the Anti-Riot Act, a riot requires the concerted action of at least three people. (Dkt. 72 at 22). This argument is baseless.

Under Wharton's Rule, "[a]n agreement by two persons to commit a particular crime cannot be prosecuted as a conspiracy when the crime is of such a nature as to necessarily require the participation of two persons for its commission." *United States v. Ruhbayan*, 406 F.3d 292,

Case 3:18-cr-00025-NKM-JCH   Document 104   Filed 05/02/19   Page 29 of 31   Pageid#: 609

300 (4th Cir. 2005) (quoting *Iannelli v. United States,* 420 U.S. 770, 774 n. 5 (1975)). "Thus, a person cannot, under Wharton's Rule, be prosecuted for conspiracy to commit such offenses as adultery, incest, bigamy, or dueling—the classic Wharton's Rule offenses—since the substantive offense necessarily requires concerted criminal activity." *Id.*

For three reasons, Wharton's Rule does not Count One's separate conspiracy charge against Defendants under 18 U.S.C § 371. First, Wharton's Rule "does not apply where, as here, a crime is capable of being committed by one person." *United States v. Rashwan*, 328 F.3d 160, 165 (4th Cir. 2003). Although the Anti-Riot Act defines a riot as a public disturbance involving "an assemblage of three or more persons," 18 U.S.C. § 2102(a), the underlying crime of traveling with the requisite intent followed by an overt act in furtherance of a riot can plainly be committed by a single person. *See* 18 U.S.C. § 2101(a) ("*Whoever* travels in interstate or foreign commerce . . . .") (emphasis added). Second, Wharton's Rule is only "aimed at activities where the immediate consequences of the crime rest on the parties themselves rather than on society at large." *Ruhbayan*, 406 F.3d at 300. Here, unlike crimes such as bigamy or adultery, the consequences of traveling in interstate commerce and engaging in overt acts in furtherance of a riot fall "on society at large," rather than on Defendants only. *Id.*

Third, "courts have specifically exempted from Wharton's Rule conspiracies that involve more people than are required for commission of the substantive offense," an exemption known as the "third party exception." *Rashwan*, 328 F.3d at 164. Here, the charged conspiracy involves four defendants, (dkt. 8 ¶ 1), but the substantive offense under § 2101 can be committed by a single person, so the third party exception applies and precludes application of Wharton's Rule. In sum, this argument is wholly without merit.

# IV. CONCLUSION

For the foregoing reasons, Defendants' motions to dismiss the indictment, (dkts. 72, 73, 74), have been denied in full. An appropriate accompanying order has issued. (Dkt. 97). The Clerk of the Court is directed to send a certified copy of this memorandum opinion and the accompanying order to all counsel of record.

Entered this __2nd__ day of May, 2019.

NORMAN K. MOON
SENIOR UNITED STATES DISTRICT JUDGE