IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 3:18-cr-25 |
| | ) | |
| BENJAMIN DALEY | ) | |
| | ) | |
| Defendant. | ) | |

## DALEY'S MOTION FOR RELEASE PENDING APPEAL AND MEMORANDUM IN SUPPORT

Defendant Benjamin Daley submits the following motion for release pending appeal and incorporated memorandum of law in support of the motion, pursuant to 18 U.S.C. § 3143(b).

## Procedure

Daley was arrested in the Central District of California on October 2, 2018, on a complaint issued in this district on August 27, 2018. ECF 3. On October 10, 2018, Daley and three other defendants were indicted and charged with conspiracy to commit an offense against the United States, to-wit, traveling in interstate commerce with the intent to riot, 18 U.S.C. § 2101, in violation of 18 U.S.C. § 371 (Count One), and a substantive violation of 18 U.S.C. § 2101 (Count Two). The charges were related to the conduct of Daley and the others at the "Unite the Right" rally in Charlottesville on August 12, 2017. ECF 7.

Daley had his initial appearance in this district on November 1, 2018 and

1

entered a plea of not guilty to the charges in the indictment. The Federal Public Defender was appointed to represent Daley. On November 20, 2018, Daley filed a motion seeking pretrial release on bail. ECF 53. The government moved for detention, and on December 3, 2018, a hearing was held. The magistrate judge denied bail and entered an order of detention. ECF 65.

On February 1, 2019, Daley moved to dismiss the indictment for the reason that the statute under which he was being prosecuted, the federal Anti-Riot Act, 18 U.S.C. § 2101, is unconstitutional. ECF 72. A hearing on the motion was held on April 22, 2019, and on May 2, 2019, the court issued a memorandum opinion denying the motion. ECF 104. On May 3, 2019, Daley entered a guilty plea, pursuant to a plea agreement under which he agreed to plead guilty to Count One of the indictment (conspiracy), and reserved the right to appeal the decision of the district court as to the constitutionality of 18 U.S.C. § 2101. ECF 113. On May 22, 2019, Daley's co-defendant, Cole White, was released on bond without objection from the Government. Defendant White originally pled guilty in November of 2018.

Daley is scheduled to be sentenced on July 19, 2019. The maximum penalty for violation of 18 U.S.C. § 371 is five (5) years imprisonment, a fine of $250,000, and a term of supervised release of three years. Daley intends to file a notice of appeal immediately after being sentenced.

### Standard for Release Pending Appeal

The standard for granting bail pending appeal—where there is no risk of flight, no danger to the community, and the appeal is not taken solely for purposes

2

of delay—is whether the appeal presents "a substantial question of law or fact" that, if successful, is "likely to result in reversal or an order for a new trial of all counts on which imprisonment has been imposed." *United States v. Miller*, 753 F.2d 19, 24 (3d Cir. 1985) (construing 18 U.S.C. § 3143(b)). For the reasons set forth, Daley submits that his appeal will present a question that satisfies this standard and entitles him to release on bail pending appeal.

## Statutory Provisions, 18 U.S.C. 3143

(b) Release or Detention Pending Appeal by the Defendant.—

> (1) Except as provided in paragraph (2), the judicial officer shall order that a person who has been found guilty of an offense and sentenced to a term of imprisonment, and who has filed an appeal or a petition for a writ of certiorari, be detained, unless the judicial officer finds—
>
>> (A) by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released under section 3142(b) or (c) of this title; and
>>
>> (B) that the appeal is not for the purpose of delay and raises a substantial question of law or fact likely to result in—
>>
>>> (i) reversal,
>>>
>>> (ii) an order for a new trial,
>>>
>>> (iii) a sentence that does not include a term of imprisonment, or
>>>
>>> (iv) a reduced sentence to a term of imprisonment less than the total of the time already served plus the expected duration of the appeal process.
>>
>> If the judicial officer makes such findings, such judicial officer shall order the release of the person in accordance with section 3142(b) or (c) of this title, except that in the circumstance described in subparagraph (B)(iv) of this paragraph, the judicial officer shall order the detention terminated at the expiration of the likely reduced sentence.
>
> (2) The judicial officer shall order that a person who has been found guilty of an offense in a case described in subparagraph (A), (B), or (C) of subsection (f)(1) of section 3142 and sentenced to a term of imprisonment, and who has filed an appeal or a petition for a writ of certiorari, be detained.

3

1.  **If Released on Terms and Conditions, Daley Is Not Likely to Flee or Pose a Danger to the Safety of Any Other Person or the Community**.

On November 20, 2018, Daley moved for pretrial release on bail. ECF 53. On December 3, 2018, a hearing was held before the magistrate judge at which Daley's parents appeared, having traveled from their home in Oregon. Transcript of detention hearing, ECF 90.

Ms. Daley testified that she and her husband have lived in the same home in Oregon for 25 years, and that is where Daley grew up and where he would live if released. ECF 90 at 8. Mr. Daley owns a construction company and would employ Daley if he is released. They proposed to serve as third-party custodians for Daley and be responsible for his compliance with the terms of release, including the costs of electronic monitoring. They also promised to cooperate with the probation office in restricting his internet access.

In summary Daley proposed the following release plan: (1) release to custody of his parents in Oregon on home confinement and electronic monitoring conditions; (2) be employed in his parents' construction company; (3) leave the home only for work, attendance at AA meetings and religious services; and (4) no internet access. He does not currently have a passport and would not obtain a new one.

All of the conduct the government relied on to oppose bail occurred prior to August 12, 2017. There is no evidence that Daley engaged in any acts of violence or encouraged any acts of violence between August 12, 2017 and October 2, 2018, when he was arrested. Furthermore, the Government agreed to the release of Cole White in May of 2019. Mr. White admitted to the same offense that Daley admitted to,

and has a similar criminal record. Therefore, there is clear and convincing evidence that if Daley is released pending appeal he will not be a flight risk or a danger to the community, in the same way that Mr. White was not a flight risk or danger.

**2. Daley's Appeal Presents a Substantial Question of Law**

In addition to assurance that the defendant seeking release pending appeal is not a flight risk or poses a danger to the community, the statute requires that the appeal presents a "substantial question of law," is not for purposes of delay, and is likely to result in reversal, an order for a new trial, or elimination or reduction of a sentence of imprisonment. 18 U.S.C. § 3143(1)(B).

To qualify as "a substantial question of law," Daley "need not show a likelihood of success on appeal," *United States v. Garcia*, 340 F.3d 1013, 1020 n. 5 (9th Cir. 2003); rather he need only show that his appeal presents' "'a close question or one that very well *could* be decided the other way." *United States v. Steinhorn*, 927 F.2d 195, 196 (4th Cir. 1991) (quoting *United States v. Giancola*, 754 F.2d 898, 901 (11th Cir. 1985) (emphasis added)). As the Supreme Court has explained in describing a similar standard:

> [The defendant] need not show that he should prevail on the merits.
> He has already failed in that endeavor. Rather, he must demonstrate
> that the issues are debatable among jurists of reason; that a court
> could resolve the issues in a different manner; or that the questions
> are adequate to deserve encouragement to proceed further.

*Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983) (citation and alterations omitted).

Daley's appeal addresses the same issue he raised in his motion to dismiss the indictment: the constitutionality of the federal Anti-Riot Act, 18 U.S.C. § 2101.

5

Although this court denied Daley's motion and ruled that the Anti-Riot Act is constitutional, *United States v. Daley*, 378 F.Supp.3d 539 (W.D.Va. 2019), several weeks later a district court in California considering the identical issue raised by Daley reached the opposite conclusion and declared the federal Anti-Riot Act to be facially unconstitutional. *United States v. Rundo*, Case No. 2:18cr00759 (C.D.Cal., June 3, 2019).[1] (Copy of opinion and order attached as Exhibit #2.) Since two district courts considering identical issues and arguments reached opposite conclusion, it can hardly be argued that that the issue Daley raises on appeal is not "debatable among jurists of reason."

Although Daley argued that the federal Anti-Riot Act is unconstitutional for several reasons, the gist of his argument is that the Act is overbroad because it regulates a substantial amount of protected speech and assembly. The Act infringes on protected speech because it does not contain an "imminence" requirement between provocative speech and lawless action. Without an imminence requirement, the Act criminalizes speech or conduct advocating or inciting violence that may be far removed in time and place from any lawless action. Thus, the Act runs afoul of *Brandenburg v. Ohio*, 395 U.S. 444, 447 (1969), which recognizes only a narrow exception to the First Amendment that permits the government to prohibit advocacy of the use of force or violating the law only "where such advocacy is directed to inciting or producing imminent lawless action and is likely to incite or

---

[1] On June 12, 2019, the government filed a notice of appeal as to the order granting the motion to dismiss the indictment. ECF 152.

produce such action."

This court circumvented the "imminence" argument by reading an imminence requirement into the statute even though it does not expressly contain one, following the reasoning expressed in *United States v. Dellinger*, 472 F.2d 359, 361-63, (7th Cir. 1972), which also rewrote the statute to avoid the "imminence" problem. Essentially the court relied on the definitions of the words "incite," "organize," "promote," and "encourage" in conjunction with the words "urge" and "instigate" to find that taken together they put "a sufficient gloss of propulsion" that imply "the required relation to action." ECF 104 at 19-20. However, the Supreme Court has recently reinforced that courts should not rewrite statutes to make them constitutional. In *United States v. Davis*, 588 U.S. ___ (2019) (declaring 18 U.S.C. § 924(c)(3)(B) unconstitutionally vague), the Court stated "the role of courts under our Constitution is not to fashion a new, clearer law to take its place, but to treat the law as a nullity. . . ."

The *Rundo* court analyzed the Act by determining that it has two elements: (1) travel or use of interstate commerce with intent (to incite a riot, participate in or carry on a riot, commit any act in furtherance of a riot, or aid and abet another person to incite, participate in, commit any act in furtherance, etc., of a riot); and (2) commit an overt act for the purpose of inciting, participating in, committing an act in furtherance, etc., a riot. Ex. 2 at p. 5. The problem with the statute, as the court points out, is that the overt act that is criminalized can be committed "either during the course of any such travel or use or *thereafter*. . . ." [emphasis supplied] The

7

statute does not require a temporal relationship between the travel or use of interstate commerce and the commission of the overt act. Nor does the statute require causation between the overt act and a "riot," which the statute defines as a public disturbance involving acts of violence or the threat of violence.

> The Anti-Riot Act, however, does not just criminalize the behavior of those in the heat of a riot. It also criminalizes acts taken long before any crowd gathers, or acts that have only an attenuated connection to any riot, so long as the individual acts with the required purpose. [ ] No violence even need to occur. A defendant could be convicted for renting a car with a credit card, posting about a political rally on Facebook, or texting friends about when to meet up.

Ex. 2 at p. 6.

Because there is "no imminence requirement," the *Rundo* court found that "[t]he Anti-Riot [Act] does not require that advocacy be directed toward inciting or producing imminent lawless action" and that it "criminalized advocacy even where violence or lawless action is not imminent." *Id.* at p. 7. As a result, the Act "eviscerates *Brandenburg*'s protections of speech." *Id.* In so holding, *Rundo* largely adopts the dissent in *Dellinger* which considered the Act unconstitutional:

> There is no required causal relationship between the travel with intent and the riot actually incited. No necessary connection whatsoever need be shown between them nor is there any time limitation as to when the overt act shall take place with relationship to the travel. I cannot conceive the constitutional validity of a statute which in this open-ended manner punishes a person at the federal level for what would otherwise be a local crime only because at some time in his past he had crossed a state line or had used a facility of interstate commerce with a nefarious intent.

*Dellinger*, 472 F.2d at 414. Rather than limit the scope of the statute to acts of violence and imminent threats of violence, the statute encompasses speech and

8

conduct that occur *before* the riot, perhaps long before the riot, and perhaps long after the travel or use of interstate commerce that triggers federal jurisdiction for the application of the statute.

The *Rundo* court explained that the definition of "riot" does not save the Anti-Riot Act because "[t]he 'riot' is some event in the future" whereas the "crime is the 'overt act' made with the purpose of urging or instigating that future event." Ex. 2 at p. 8. Therefore "[e]ven if the riot itself would eventually pose a clear and present danger, the overt act does not." *Id.* Finally, the court rejected the assertion that the terms "incite," "organize," "promote," and "encourage" saved the statute by creating an imminence requirement. "Even if terms like 'organize' or 'promote' imply *some* degree of action—like urging people to attend an event—there is no requirement that the organizing or promoting be directed towards *imminent* violence or lawless action—that event, for instance, could be months away." *Id.* at p. 9.

The Anti-Riot Act was enacted in 1968, before the Supreme Court held implicitly in *Brandenburg*, 395 U.S. at 447-48, and expressly in *Hess v. Indiana*, 414 U.S. 105, 108-09 (1973), that mere advocacy of violence is protected speech. As the dissent in *Dellinger*, 472 F.2d at 412, points out, the Anti-Riot Act was intended to punish just this. And now the *Rundo* court has agreed that the act ultimately "does not focus on the regulation of violence" but on "*pre*-riot communications and actions" and "in doing so, it sweeps in a wide swatch of protected expressive activity as part of its efforts to punish rioting."

9

## Conclusion

The issue Daley intends to raise on appeal, the constitutionality of 18 U.S.C. § 2101, presents a substantial question of law that is debatable among jurists of reason. Daley is not prosecuting this appeal for reasons of delay. If successful, the result will be a reversal, a vacation of Daley's conviction, and dismissal of the indictment. Daley has presented a release plan that assures he will not be a flight risk or a danger to the community. Without release on bond, there is a distinct possibility that he will serve most, if not all, of his sentence before his appeal is decided. Because it at least possible that his appeal will result in a reversal of his conviction and dismissal of the indictment, the fact that he will have served most, or all, of his sentence before the appeal is decided is a factor weighing towards release.

Respectfully submitted,

BENJAMIN DALEY

By Counsel

Counsel:

/s Frederick T. Heblich
Frederick T. Heblich, Jr. (VSB 21898)
First Assistant Federal Public Defender
Office of the Federal Public Defender
401 E. Market Street, Ste. 106
Charlottesville, VA 22902
Tel. (434) 220-3386

Lisa M. Lorish (VSB No. 81465)
Assistant Federal Public Defender
Office of the Federal Public Defender
401 E. Market St, Ste 106
Charlottesville, VA 22902
Tel (434) 220-3380

**CERTIFICATE OF SERVICE**

I hereby certify that on July 15, 2019, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following: counsel of record; and I hereby certify that I have mailed by United States Postal Service the document to the following non-CM/ECF participants: none.

                                                s/ Lisa M. Lorish
                                                Asst. Federal Public Defender